UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NYGEL JACK,<br><br>　　　　　　Plaintiff<br><br>　v.<br><br>JOHN RIVELLO, *et al.*,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 3:24-CV-01495<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Nygel Jack, currently incarcerated at SCI-Huntingdon, has filed a complaint under 42 U.S.C. § 1983, arising from the prison's treatment of his mental illness. Pursuant to 28 U.S.C. § 1915A, the Court will permit Jack to proceed on a claim for injunctive relief and dismiss all other claims. The Court will grant Jack an opportunity to amend his complaint prior to serving the remaining parties.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On September 4, 2024, the Court received and docketed Jack's complaint against 16 defendants affiliated with SCI-Huntingdon (Doc. 1), and his motion to proceed in forma pauperis (Doc. 2). Following an Administrative Order directing him to file a certified account statement and record of transactions (Doc. 5), Jack provided the requested documentation on September 19, 2024. (Doc. 8).

The complaint is difficult to parse, but it arises from Jack's objections to the prison revoking his "D-code status." The Court infers that Jack is referring to the "D Stability Code . . . [which] applies to inmates who have the most significant mental health needs and

entitles them to the greatest amount of mental health resources available." *See Dooley v. Wetzel, 957 F.3d 366, 370 (3d Cir. 2020)* (citing Pa. DOC Reg. § 13.8.1).

Jack alleges as follows: On July 2, 2024, Jack requested to speak with a psychiatric provider. Defendant Jessica Tress, a nurse practitioner, approached the door of Jack's cell. Jack does not describe what he said at this meeting. However, he alleges that Tress "cut [him] off in mid-conversation" and said: "[Y]ou're not getting your D-code back! Nor are we re-evaluating you for one! So go ahead and hang it up! I don't care!" After this comment, Jack showed Tress a noose made from his bedsheet, then "covered" his cell door so the cell was not visible from the outside. Tress "walked away" from Jack's cell. Because Jack's door was covered, "G-Control" was notified and Jack was extracted from his cell. Jack alleges that four correctional officers, Defendants Greene, McCulley, Suydam, and Mozley, "excessively pulled" him from the cell. During the extraction, Jack was naked and exposed to the other inmates in his unit, and suffered what he describes as "long-term (lower back) injuries."

Jack alleges that his mental health is "deteriorating." After the July 2 incident, he filed a series of grievances and requests regarding the loss of his D-code status and unspecified disability accommodations. In response to a grievance, Tress advised Jack that he was previously assigned "D-code" status because of his IQ testing, but his status was later changed to "C-code" after further IQ testing. On August 1, 2024, Jack submitted a "DC-135(A) Request to Staff Member[1] to be re-evaluated for symptoms of PTSD," because he was having nightmares of the July 2 incident, but did not receive a response.

---

[1] The DC-135 form is the way inmates obtain their medical records. *See Molina v. Kauffman*, No. 4:21-CV-00038, 2023 WL 3077801, at *10-11 (M.D. Pa. Apr. 25, 2023). Jack does not explain why he used this form for his request to be "re-evaluated."

Jack then filed this complaint for compensatory and punitive damages, seeking relief under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and under 42 U.S.C. § 1983 for denial of his rights under the First and Eighth Amendments.

## II.     28 U.S.C. § 1915A S<small>CREENING</small>

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those

4

allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III.   DISCUSSION

Jack seeks to bring claims under (1) the Americans with Disabilities Act ("ADA"), for discrimination and failure to provide him with reasonable accommodations[2]; (2) the Rehabilitation Act ("RA"), on the same theories; (3) the Eighth Amendment, for denial of adequate medical care for his mental illness; (4) the Eighth Amendment, for cruel and unusual

---

[2] Jack recites a series of legal theories for his ADA and RA claims that have no apparent basis in the complaint. For example, he states that the Pennsylvania Department of Corrections "failed to adequately monitor, supervise, and[/]or control" its employees, and that various defendants failed to "discipline staff, employee[]s, workmen and/or agents." These "conclusory allegations peppered with legal buzzwords" are insufficient to state a claim. *Taylor v. Pennsylvania*, No. 17-CV-3369, 2018 WL 6574187, at *26 (E.D. Pa. Dec. 12, 2018). Accordingly, the Court's analysis is limited to the legal theories bearing a plausible connection to the factual events he describes in his complaint.

5

punishment related to his extraction from his cell; and (5) the First Amendment, for "intentional retaliation".

    A. ADA/RA

Jack brings claims under the ADA and RA[3] against Defendants John Rivello, Joel Kohler, Jill Spyker, W. House, Sean McCorkle, Lucas Malishchak, C. Loy, and Tress, all of whom are alleged to have administrative roles relating to the care of inmates at SCI-Huntingdon. To state a claim under either the ADA or the RA, Jack must allege that he is a qualified individual with a disability who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability. *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019). Because he seeks compensatory damages, Jack must also show intentional discrimination under a deliberate indifference standard. *Id.*

    Presuming that Jack's mental illness is a qualifying disability, Jack has not pled facts demonstrating that he has been precluded from any program, service, or activity because of his disability. Jack objects to the loss of his "D-code" status, but the complaint does not support an inference that he lost that status *because* he is disabled. Rather, the DOC allegedly revoked it because it concluded he *was not* disabled in a way that justified that status.

    Jack alleges that various defendants ignored his requests for "ADA accommodations," and failed to engage in an "interactive process" to find reasonable accommodations. Neither the ADA nor the RA requires an "interactive process"; that term is typically used in the

---

[3] The Court considers the ADA and RA claims together because "the substantive standards for determining liability are the same." See *McDonald v. Com. of Pa., Dep't of Pub. Welfare Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995).

employment context as one way to determine whether an employee with a disability can work for a particular employer. *See Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 359 (3d Cir. 2002) (citing 29 C.F.R. § 1630.2(o)(3)). Other than generally stating that his "mental impairments . . . restrict[] his major life activities," Jack has not explained why he requires disability accommodations beyond what he is already receiving, so the defendants' failure to discuss that with him does not support an ADA or RA claim.

    B. SECTION 1983

The remainder of Jack's claims allege violations of federal constitutional rights committed by state officials, and therefore fall under 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

    C. DENIAL OF MEDICAL CARE

Jack alleges that Defendants Malishchak, Rivello, Spyker, McCorkle, and Tress are "failing to provide [Jack] adequate mental health care/treatment." Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104. To sustain a constitutional claim under the Eighth

Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). Although mere negligence, or even medical malpractice, is not itself a constitutional violation, courts have "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Jack alleges that his mental health is "deteriorating," and that his request to be "reevaluated" has been ignored. It is unclear how these defendants are personally involved in Jack's medical care, aware of Jack's allegedly deteriorating condition, or deliberately indifferent to his medical needs, so the complaint states no claim against them in their individual capacities. *See, e.g., Mueller v. Ctr. Cnty.*, No. 3:09-CV-1880, 2009 WL 4912305, at *8 (M.D. Pa. Nov. 23, 2009).

However, Jack's Eighth Amendment claim is premised on an ongoing violation (that the defendants are "failing" to provide adequate care), and read in context, it is more appropriately understood as a request for injunctive relief. Assuming Jack's allegations as true at the pleading stage, his complaint supports a plausible inference that he is not receiving constitutionally adequate medical care for his mental illness. Jack alleges that Defendants

Spyker, Rivello, McCorkle, and Malischak are all responsible for medical care of inmates at SCI-Huntingdon[4], which would make them appropriate defendants in a claim for injunctive relief based on the denial of adequate medical care. *See, e.g., McCreary v. Fed. Bureau of Prisons*, No. 1:17-CV-01011, 2018 WL 11540928, at *10-11 (M.D. Pa. June 20, 2018), report and recommendation adopted, No. 1:17-CV-01011, 2018 WL 11536972 (M.D. Pa. Oct. 26, 2018); *Johnson v. Beard*, No. 3:08-CV-0593, 2008 WL 2594034, at *6 (M.D. Pa. June 27, 2008). Noting the requirement that *pro se* pleadings be "liberally construed," *Estelle*, 429 U.S. at 106, Jack may proceed on a claim for injunctive relief against Defendants Spyker, Rivello, McCorkle, and Malischak in their official capacities.

D. CRUEL AND UNUSUAL PUNISHMENT

Next, Jack pursues a second claim under the Eighth Amendment, alleging that his extraction from the cell constituted cruel and unusual punishment. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When reviewing Eighth Amendment excessive-force claims, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or

---

[4] The Court finds that Tress is not a proper defendant for this claim. Jack alleges that Tress is a "nurse practitioner . . . who's responsible for inmates['] mental health." However, other than their interaction prior to the cell extraction, there is no allegation that Tress is responsible for Jack's medical care, so the complaint does not support an inference that Tress would be "responsible for ensuring that any injunctive relief is carried out." *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)). Nor does the allegation that Tress "walked away" from Jack's cell after his suicide threat support an inference of deliberate indifference, given that a team was summoned to extract him from the cell.

maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quoting (*Hudson*, 503 U.S. at 7)).

Jack brings this claim against Defendants Heaster, Mosley, Greene, Suydam and McCulley, the correctional officers who allegedly carried out the extraction. The complaint belies any inference that the officers were not justified in extracting him from his cell, since Jack alleges that he had threatened suicide and covered his cell from outside view. *See Washington v. Ondrejka*, 822 F. App'x 104, 106 (3d Cir. 2020). Jack labels the extraction as "excessive," and alleges that he sustained "long-term" lower back injuries. These bare allegations do not support an inference that the officers intentionally caused pain to Jack. In particular, the allegation that Jack was injured does not itself raise an inference that the defendants inflicted pain unnecessarily or wantonly. *See Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000) (courts must "focus on the force used, as opposed to the injury inflicted").

Jack also infers "cruel and unusual punishment" from the fact he was naked during the extraction, and therefore exposed to the prisoners around him. As noted, the complaint indicates that the extraction served the legitimate penological purpose of intervening in Jack's threatened suicide attempt. *See Bracey v. Sec'y Pennsylvania Dep't of Corr.*, 686 F. App'x 130, 136 (3d Cir. 2017) ("[A]n inmate's right of privacy exists only so far as it is 'not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.'") (quoting *Hudson*, 468 U.S. at 523). There is no suggestion that the officers sought to expose him to other inmates for a malicious reason. Given the legitimate purpose, the allegation that other inmates briefly saw Jack naked, although unpleasant, is not the kind that courts recognize as a violation of a prisoner's constitutional rights. *See, e.g., Eby v. Karnes*, No. 1:19-CV-2069, 2020 WL 1550634 (M.D. Pa. Apr. 1, 2020) (no constitutional violation where visual

cavity search was performed in front of other inmates); *Illes v. Beard*, No. 1:12-cv-964, 2013 WL 2285565, at *5-6 (M.D. Pa. May 23, 2013) (no constitutional violation where inmates were required to shower in view of other inmates and staff).

E. RETALIATION

Finally, Jack alleges that Defendants Fowler, Knode, and McCulley "intentionally retaliated" against him, in violation of the First Amendment. To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted).

The basis for Jack's claim is unclear. Although "[r]equesting a disability accommodation is constitutionally protected conduct," *Harris v. Giroux*, No. 1:16-CV-0038, 2019 WL 330459, at *9 (W.D. Pa. Jan. 25, 2019), there are no allegations against these officers in the body of the complaint. There is no basis for any inference that they were personally involved in any adverse action against Jack or took any action against him for a retaliatory purpose. Accordingly, Jack has not stated a retaliation claim against them.[5]

---

[5] Construing Jack's complaint liberally, the only potential incident of retaliation centers on Defendant Tress's alleged comment to Jack: "[Y]ou're not getting your D-code back! Nor are we re-evaluating you for one! So go ahead and hang it up!" However, Tress's isolated verbal comments do not constitute an "adverse action" for retaliation purposes. *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("threats alone do not constitute retaliation"); *Green v. Wetzel*, 2019 WL 1426955, at *8 (W.D. Pa. Mar. 29, 2019) ("Because verbal threats and comments are not adverse actions, Santos' sarcastic comments . . . are not actionable") (citing *Chruby v. Kowaleski*, 534 Fed. App'x. 156, 161 (3d Cir. 2013)).

**IV.    CONCLUSION**

The Court will grant Jack's motion to proceed *in forma pauperis* (Doc. 2), grant Jack leave to proceed on a claim for injunctive relief, and dismiss all other claims, with leave to file a proposed amended complaint. An appropriate Order follows.


Dated: December 10, 2024                             *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States District Judge**